which he paid for the exchange, and suffer without remedy the loss and inconvenience of returning the bill to California for recourse against the drawer. And even if no premium had been paid, the. holder, entitled under the drawer's contract to receive the $1,000 in New York, would not be indemnified if he. could only sue for and obtain that amount in California. From these circumstances grew the customary right of the holder of the bill, by the law merchant, to draw a bill upon the drawer—literally a bill of exchange—for the principal amount which he should have received, increased by the cost of protest, and the sum which it will cost to replace that principal amount at the place where it should have been paid. This right to recover for re-exchange is therefore based upon the obligation to pay at the place where the bill was payable; and, if the holder of the bill ultimately receives what he was entitled to at the place where the bill was payable, with interest and the cost of the protest, he receives just what he was entitled to. The liability of the drawer of the bill to the payee at the place where the bill was issued has no application to this case. The purchaser of the bill did not sue in the United States of Colombia. He came to New York, where the bill was payable, and sued the drawer here, and has received here the money that was due and to which he was entitled, with interest and expenses. If Gonzalez had sought to recover in the United States of Colombia from the drawer of the bill the amount that he was there entitled to receive, he would have been entitled to recover the cost of transmitting the money from New York to Colombia; but he has recovered in New York the money that he was entitled to receive in New York, and he has therefore sustained no loss for re-exchange, and is not entitled to recover its cost.

The judgment appealed from should be reversed, with costs, and the demurrer sustained, with costs, with leave to the plaintiff to amend the complaint within 20 days on payment of costs in this court and in the court below.

O'BRIEN, P. J., and McLAUGHLIN, J., concur. CLARKE and HOUGHTON, JJ., dissent.

---

MULLER et al. v. WHELEN et al.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

1. PLEADING—ANSWER—SERVICE ON CODEFENDANT—TIME FOR SERVICE.

Under Code Civ. Proc. § 521, providing that, where the judgment may determine the rights of the defendants as between themselves, a defendant who requires such determination must demand it in his answer, and at least 20 days before the trial serve a copy of his answer upon the attorney for each of the defendants to be affected by the determination, a service of such an answer by one defendant upon another 20 days before a day set for trial, pursuant to an adjournment taken when the cause was ready for trial, is served in time.]

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Pleading, §§ 1011, 1012.]

2. SAME—SERVICE ON PLAINTIFFS—SUFFICIENCY.

Where three plaintiffs appeared by one attorney and a fourth by another attorney, both of whom signed the complaint, service of the answer upon one of the attorneys was sufficient as to all the plaintiffs.

**3. APPEAL—PARTIES ENTITLED TO ALLEGE ERROR.**
    One defendant cannot complain because plaintiffs gave another defendant additional time to answer, or waived default and accepted service of an answer tendered too late.

Appeal from Special Term, New York County.

Action by Charles F. Muller and others, as executors and trustees under the will of Thomas W. Evans, deceased, against Katherine W. Whelen and others. From an order denying a motion by the defendant named to compel the defendant the Thomas W. Evans Museum and Institute Society to accept service of her answer, she appeals. Reversed, and motion granted.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

J. Noble Hayes, for appellant.
Charles H. Tuttle, for respondents.

HOUGHTON, J. The appellant is one of the numerous defendants in this action. The answers of various defendants to the plaintiffs' complaint had been served, not including, however, that of appellant, and the cause noticed for trial and placed upon the calendar. Various adjournments were taken from time to time, and the trial was finally set down for May 7, 1906. On the 16th of April, 21 days prior to the day so set for the trial of the action, the appellant served upon her codefendant, this respondent, her answer to the complaint. This answer was returned on the ground that it had not been served within the time allowed by law. Thereupon the appellant moved that the respondent be compelled to accept service thereof, and from an order denying such motion she appeals.

It is provided by section 521 of the Code of Civil Procedure that where the judgment in an action may determine the ultimate rights of two or more defendants as between themselves, a defendant who requires such a determination must demand it in his answer, and must, at least 20 days before the trial, serve a copy of his answer upon the attorney for each of the defendants to be affected by such determination; and that, if any defendant has not appeared, service may be made upon him in such manner as the court or a judge thereof may direct. This action is one where the judgment may determine the ultimate rights of two or more defendants, and the answer which the appellant served demands such determination as between herself and the respondent, her codefendant. Respondent seeks to justify the rejection of the answer on the ground that the appellant was many months in default in the service of her answer upon the plaintiffs' attorneys, and further, that it is not contemplated by the Code that a codefendant should have the right to serve his answer 20 days before an adjourned day fixed for trial, the cause having been ready for trial at a previous time. The language of the Code is that the answer must be served upon a codefendant "at least twenty days before the trial," and we think if that is in fact done the defendant is within his rights. A defendant takes his chances as to when the trial will actually be brought on if he does not serve his answer within 20 days before the cause is placed upon the calendar.

If, however, an adjournment shall have been taken so that he has an opportunity to serve within the prescribed time before the trial actually comes on, he is in time, and his answer cannot be returned because it was not sooner served.

On the same day that the appellant served her answer upon the respondent, she served it upon one of the attorneys for the plaintiffs, who accepted service by retaining it as though served in time. The action is one action. Three of the plaintiffs, however, appear by one, attorney, and the fourth appears by another attorney, both attorneys signing the complaint. If the plaintiffs saw fit to bring their action in this way, we think service of any paper upon either one of the attorneys who subscribed the complaint was good service upon both. It cannot be that the defendant was obliged to serve duplicate sets of the same papers in the one action upon each attorney because the plaintiffs chose to appear in this unusual manner. It was for the plaintiffs to say whether or not the defendant was in default in the service of her answer. They could extend her time to answer if they saw fit, and no defendant could complain. So, too, they could waive her default and accept service of an answer if the time had not been formally extended.

This action is an important one, and it may be of great moment to the appellant that her answer remain in the case. We think she served it properly, and that the motion to compel its acceptance should have been granted.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.

---

## KNICKERBOCKER TRUST CO. v. GARDEN.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

**1. GUARANTY—CONSTRUCTION—CONDITIONS—UNDERWRITING CONTRACT.**

A contract between a construction company, a trust company, and underwriters recited that the construction company proposed to secure real estate and erect a hotel, and to authorize the issue of $7,500,000 first lien bonds, $4,500,000 of which should be reserved for retirement of a prior mortgage, and that it was desired to secure underwritings for $2,000,000 of the remaining $3,000,000 bonds. The underwriters were to be bound when $2,000,000 of such bonds were underwritten. The trust company agreed to loan money to the construction company; the underwriters guarantying repayment of the loan pro rata, the trust company to hold the bonds as collateral, and payments to the trust company by subscribers to be credited as payments on their subscription. It was agreed that the recitals were made by the construction company and the underwriters, the trust company "not to be responsible therefor." *Held*, that the underwriters were responsible under their guaranty for their pro rata share of the loan, though the construction company had not carried out the recitals as to its purposes and intentions.

**2. SAME—CORPORATIONS—ISSUE OF BONDS.**

A bond underwriting contract, after reciting that the bonds should be first liens, stated that "for the retirement of a certain prior mortgage" provision shall be made by reserving $4,500,000 of said consolidated mortgage bonds, and it is desired to secure underwriting for at least $2,000,000 of the "remaining $3,000,000" of the bonds. The agreement was to be binding when $2,000,000 of "such bonds" were underwritten.